**IN THE UNITED STATES DISTRICT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION**

|  |  |  |
|---|---|---|
| | | FILED: **10/27/14** |
| | | U.S. DISTRICT COURT |
| **UNITED STATES OF AMERICA** | : | EASTERN DISTRICT COURT |
| | : | DAVID J. MALAND, CLERK |
| | : | |
| **v.** | : | **CRIMINAL #1:08-CR-36** |
| | : | **CAPITAL CASE** |
| **JOSEPH EBRON,  Movant.** | : | 1:14cv539 |

**UNOPPOSED MOTION
TO STAY AND HOLD § 2255 PROCEEDINGS IN ABEYANCE**

Joseph Ebron moves, with the government's consent, to stay and abate proceedings in this capital post-conviction motion while he litigates newly available evidence that undermines his prior murder conviction in the Superior Court of Washington, D.C.  The prior conviction was used by the government as an aggravating factor in Mr. Ebron's capital trial before this Court.  In support of this motion, Mr. Ebron states the following:

1.      Mr. Ebron was convicted of murder and conspiracy and sentenced to death by this Court on May 18, 2009.  Contemporaneously with this motion, he has filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.

2.      A major focus of the government's penalty phase case at trial was Mr. Ebron's prior conviction for murder in the Superior Court of Washington, D.C. ("D.C."), on January 11, 1999.  The government relied on that prior conviction to support both statutory and non-statutory aggravating factors and highlighted the underlying facts in argument.  The prosecutor concluded his penalty-phase summation:

1

> He went to prison for a murder and killed another inmate while he was serving time. What's more dangerous than that? Now, that fire has been burning in him and it still is burning and now it's the time for you to put it out.

Tr. 5/18/09 (Selection), 791.

3. Newly available witnesses have now declared under penalty of perjury that Joseph Ebron was not one of the shooters in the prior murder, and that the police threatened the government's star witness with prosecution for that and other murders if he did not cooperate. Those threats were never disclosed as the time of Mr. Ebron's D.C. trial. He has filed an amendment to his pending post-conviction petition in the D.C. Superior Court, proffering the new information in support of several claims for relief (amendment attached as Exhibit 1). The D.C. Court of Appeals has determined that the petition is not procedurally barred and has remanded for determination of the merits of Mr. Ebron's claims (order attached as Exhibit 2).

4. Mr. Ebron argues in his pending § 2255 motion that his capital trial counsel were ineffective on multiple grounds, including their failure to conduct a reasonable investigation of the D.C. murder. He plans to seek discovery and an evidentiary hearing. The new evidence may fundamentally affect the scope of proceedings in this Court. In the course of deciding the § 2255 motion, the Court will need to assess discovery requests related to the D.C. case, decide whether to order an evidentiary hearing on the claim related to the D.C. case, evaluate any procedural defenses the government may raise to this claim, and, ultimately, weigh the aggravating evidence relating to the D.C. case against the mitigating evidence in determining whether Mr. Ebron has proven prejudice in connection with any of his claims.

5. As explained in the Memorandum of Law below, the most appropriate initial forum to develop the evidence and associated legal claims is the court where the evidence is located and the litigation took place. The D.C. courts' resolution of Mr. Ebron's claims may

obviate or simplify this Court's determination of the propriety and extent of discovery, the need for a hearing, and the underlying claims for relief.  As further explained in the Memorandum of Law, these concerns constitute compelling grounds to stay these § 2255 proceedings to allow Mr. Ebron to litigate his pending post-conviction application in the appropriate forums in Washington, D.C.

6.    On October 14 undersigned counsel, Claudia Van Wyk, spoke by telephone with Assistant U.S. Attorney Joseph Batte, who advised her that the government does not oppose a stay and abeyance of the proceedings in this case, during which time no agreement respecting further filings by the parties will be necessary.

## MEMORANDUM OF LAW

I.    **BECAUSE NEWLY AVAILABLE EVIDENCE, WHICH UNDERMINES THE PRIOR MURDER CONVICTION THAT THE GOVERNMENT PROFFERED IN AGGRAVATION TO OBTAIN MR. EBRON'S DEATH SENTENCE, REQUIRES DEVELOPMENT IN THE WASHINGTON, D.C., COURTS, THIS COURT SHOULD GRANT A STAY AND ABEYANCE TO ALLOW HIM TO  LITIGATE HIS CLAIMS IN WASHINGTON, D.C.**

Several claims in the § 2255 motion implicate Joseph Ebron's prior D.C. murder conviction.  He argues that his trial counsel failed to object to its introduction at the guilt-innocence phase of his Texas trial, and that counsel failed to investigate the underlying facts, leaving them unprepared when the government proffered the conviction in support of both statutory and non-statutory aggravating factors.   Mr. Ebron's post-conviction petition challenging the prior murder conviction is pending in the D.C. courts.  Because the D.C. courts can best assess the new evidence in the first instance, because allowing them to do so promises to simplify the pending litigation in this Court, and because Mr. Ebron is already litigating his D.C. claims actively, this Court should stay these § 2255 proceedings and hold them in abeyance

3

while the D.C. litigation proceeds.  *See Rhines v. Weber*, 544 U.S. 269, 276 (2005); *Landis v. North American Co.*, 299 U.S. 248, 254 (1936).

### A.      The New Evidence Is Significant.

At Mr. Ebron's D.C. trial, the government's chief witness, Bernard Pinkney, testified that Mr. Ebron and his co-defendant, Steven Goode, left from Pinkney's apartment armed with guns and returned a few minutes later.  While they were gone, he heard gunfire nearby, and when they returned, he claimed, they told him that they had missed their intended victim but had hit a bystander.  The government's other main witness, Rose Brown, testified that she heard gunfire and then saw Mr. Ebron and Steven Goode, with guns in their hands, run back into the building where she and Pinkney both lived.  Exhibit 1 at 3-9.

Pinkney testified that a third person named Stanley (known as Gregory Quarles) remained behind in his apartment when Mr. Ebron and Goode left.  Mr. Ebron's amended petition includes a statement by Stanley, under penalty of perjury, indicating that he was present at Pinkney's apartment on the day of the shooting, that Mr. Ebron was there, and that Mr. Ebron did not leave the apartment during the shooting.  Mr. Ebron's sister (who lived with Pinkney but was not present on the day of the shooting) states under penalty of perjury that she heard that Goode and Stanley were the actual shooters.  Exhibit 1 at 15-16.  Mr. Ebron maintains that his trial counsel was ineffective for failing to conduct a reasonable investigation, which would have uncovered this exculpatory evidence.  Exhibit 1 at 12.

Pinkney himself states, under penalty of perjury, that the detectives who interviewed him threatened to charge him with both this murder and other unrelated murders, and to prosecute his mother, his brother, the mother of his children, and the mother of his uncle's children, if he did not cooperate.  Exhibit 1 at 19-20.  He also states that Rose Brown was not present at the apartment building when the shots rang out.  Mr. Ebron argues that the government's failure to

disclose this powerful impeachment evidence violates his right to due process of law.  Exhibit 1 at 18 (citing *Brady v. Maryland*, 373 U.S. 83 (1963)).[1]

**B.       The D.C. Litigation Implicates Mr. Ebron's Pending § 2255 Claims.**

Mr. Ebron argues in his pending § 2255 motion that trial counsel were ineffective for failing to conduct a constitutionally adequate investigation of the D.C. homicide, leaving them unable to challenge the prior conviction's validity or even to provide the jury with context that would help minimize its weight.  He also challenges counsel's failure to contest the introduction of the prior murder conviction at the guilt-innocence phase of trial.

Mr. Ebron's claim that his capital trial counsel were ineffective in connection with his prior murder conviction is part of a larger claim that they were ineffective for failure to conduct constitutionally adequate investigation and preparation of other aspects of his case, and failure to engage in appropriate advocacy during the trial.  To resolve the larger claim, this Court will have to "reweigh the evidence in aggravation against the totality of available mitigating evidence." *See Wiggins v. Smith*, 539 U.S. 510, 534 (2003).  That assessment will include evidence surrounding Mr. Ebron's prior murder conviction.

Further, Mr. Ebron anticipates that he will make a substantial discovery request in light of the new evidence involving the D.C. case, and that he will seek an evidentiary hearing to resolve the many contested questions of fact evident in the pleadings, including those concerning the prior murder.

**C.       The New Evidence Requires a Stay of These Proceedings.**

Mr. Ebron's pending D.C. post-conviction application promises to simplify the issues

---

[1] Mr. Ebron also argues that his appellate counsel was ineffective for failing to develop this evidence during direct appeal, as required by D.C. law, and that both trial counsel and appellate counsel were ineffective for failing to challenge the prosecution's improper cross-examination of a defense witness.  Exhibit 1 at 24, 30.

now before this Court. Mr. Ebron plans to seek discovery and an evidentiary hearing in D.C., and to pursue relief in any appropriate forum there. Once he has developed the facts and the D.C. courts have ruled, this Court will have more information about the strength of his claims, the roles of the participants in the murder, the scope of the investigations by law enforcement and the defense, and the disclosure or concealment of exculpatory evidence. The D.C. courts' rulings on Mr. Ebron's discovery requests may eliminate or narrow his projected discovery requests in this Court. The information will inform the Court's assessment of the need for an evidentiary hearing, and its weighing of the aggravating and mitigating factors necessary to assess prejudice.

Under these circumstances, the Court should exercise its discretion to stay these proceedings. "District courts do ordinarily have authority to issue stays . . . where such a stay would be a proper exercise of discretion." *Rhines v. Weber*, 544 U.S. 269, 276 (2005) (citing *Landis v. North American Co.*, 299 U.S. 248, 254 (1936); *Clinton v. Jones*, 520 U.S. 681, 706 (1997)). As the Supreme Court long ago explained:

> [T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance.

*Landis*, 299 U.S. at 254-55. To justify a stay in one case while proceedings go forward in another case, the parties and issues need not be identical. *Id.* at 254. Particularly where the legal issues or facts are complex, awaiting the resolution of a case in another court may settle or simplify the issues in the court that stays proceedings. *See id.* at 256. Nevertheless, the party seeking a stay bears the burden of establishing its justification, and the stay must remain "within the bounds of moderation" in terms of time. *Id.* at 256-57; *accord In re Beebe*, No. 95-20244, 1995 WL 337666, at *1-6 (5th Cir. May 15, 1995) (while stay to await result of other litigation

was not "per se impermissible" and was allowable exercise of discretion at inception, stay of "indefinite" duration was immoderate and required further consideration by district court).

In a case analogous to this one, *Hines v. D'Artois*, 531 F.2d 726, 733-37 (5th Cir. 1976), the defendant sought a stay in a § 1981 discrimination suit until the plaintiffs had exhausted their remedies in a related suit before the EEOC. The court observed that whether a stay is "immoderate" under *Landis* depends on the scope of reasons for the stay. *Id.* at 733. Relying on precedent, the court ruled that a "general policy" allowing stays in those circumstances would vitiate a Congressional policy to allow litigants to seek § 1981 remedies despite parallel EEOC actions. *Id.* at 736. In some circumstances, however, a district court could appropriately order a stay when it perceived "a reasonable possibility that EEOC conciliation efforts will be productive." *Id.*; *see also Whitaker Chalk Swindle & Sawyer, LLP v. Dart Oil & Gas Corp.*, No. 4:08-cv-684-Y, 2009 WL 464989, at *3 (N.D. Tex. Feb. 23, 2009) (stay in relation to discovery dispute falls within district court's discretion, so long as court weighs *Landis* factors); *Trinity Industries, Inc. v. 188 L.L.C.*, No. 3:02-cv-405-H, 2002 WL 1315743, *2-*3 (N.D. Tex. June 13, 2002) (granting stay pending appeal in related case that may determine appropriateness and necessity of case before court).

The Supreme Court has ruled that district courts retain their discretion to order stays in cases brought under AEDPA, provided that the stays do not contradict AEDPA's purposes. In *Rhines*, the petitioner sought to stay proceedings to present unexhausted claims in state court. The Supreme Court held:

> [I]t would likely be an abuse of discretion for a district court to deny a stay and to dismiss a mixed petition if the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics.

544 U.S. at 278. The Court cautioned, however, that "even where stay and abeyance is appropriate, the district court's discretion in structuring the stay is limited by the timeliness concerns reflected in AEDPA." District courts should set short time limits for petitioners to file in state court and to return to federal court after the state court proceedings have ended. *Id*. at 277-78; *see also United States v. Prows*, 448 F.3d 1223, 1229 (10th Cir. 2006) (citing *Rhines*, and noting that district court has discretion to stay § 2255 proceedings); *O'Connor v. United States*, 133 F.3d 548, 550-51 (7th Cir. 1998) (observing that district court may stay § 2255 proceedings pending resolution of other litigation).

Courts in this circuit have granted stays in circumstances like those in this case. In *Murphy v. Thaler*, No. 3:10-cv-163-N, 2010 WL 2381500, *1-*3 (N.D. Tex. June 8, 2010), the trial court found that, while inadequate investigation by habeas counsel would not justify a stay, the prosecution's withholding of *Brady* information would constitute good cause. Because the suppressed evidence showed that the crimes could not have been committed by the petitioner and the identification evidence was not as certain as it seemed at trial, the claims were potentially meritorious, and there was no indication that the petitioner had engaged in dilatory tactics. The district court accordingly ordered a stay and abeyance of the habeas proceedings pending exhaustion in state court, subject to a strict schedule. *Id.* at *3; *accord Carpenter v. Thaler*, No. 3:02-cv-1145-B, 2010 WL 4279426 at *1 (N.D. Tex. Oct. 25, 2010) (state's non-disclosure and witness's conduct prevented defense from learning of impeachment evidence and established good cause); *Speer v. Dretke*, No. 2:04cv269, 2008 WL 2065798, at *3 (E.D. Tex. May 13, 2008) (finding good cause for stay and abeyance because "factual bases for these claims may not have been available at the time Speer filed his state post-conviction petition," and finding *Giglio* claim not plainly meritless and no dilatory tactics where petitioner sought discovery before filing

stay motion); *Canales v. Quarterman*, No. 2:03cv069, 2007 WL 922150 at *2-*3 (E.D. Tex. March 23, 2007) (same).

In this case, as in *Speer* and *Canales*, the chief factual basis for Mr. Ebron's claim was not available at the time of prior D.C. proceedings because of the ineffective assistance of his prior D.C. counsel, who ignored his repeated requests to investigate his claims. The D.C. Court of Appeals has determined that his claims there are not procedurally barred (Exhibit 2). The attached D.C. amendment sets forth claims that are more than "potentially" meritorious. *See Carpenter*, 2010 WL 4279426 at *1 (stressing that federal court's determination of "merit" for purpose of stay does not require "full adjudication" of credibility questions, which state court should resolve). Finally, Mr. Ebron seeks to litigate his new claims in D.C. to obtain relief, not for the sake of delay. Indeed, as the D.C. courts have found, he has been seeking relief in that forum since before this Texas case even arose. *See Rhines*, 544 U.S. at 278. His amendment to the D.C. post-conviction motion has already been filed, and litigation in that court is under way. He is prepared to return expeditiously to this Court when D.C. proceedings have ended. Thus, the scope of the stay Mr. Ebron seeks is moderate and the reasons for the stay compelling. *See Hines*, 531 F.2d at 733 (citing *Landis*, 299 U.S. at 254-55).

Mr. Ebron is prepared to prove that new evidence, which his Texas trial counsel could have developed through a reasonable investigation, undermines the prior D.C. conviction that the government proffered in aggravation to secure his death sentence. Allowing the D.C. courts to resolve his claims will narrow and simplify the issues before this Court in Mr. Ebron's projected discovery motion, in his projected evidentiary hearing motion, and in the underlying § 2255 motion. This Court should accordingly stay the current proceedings and hold them in abeyance, to allow Mr. Ebron to litigate his claims in D.C.

## CONCLUSION

For the reasons above, this Court should enter an order staying Mr. Ebron's § 2255 proceedings and holding them in abeyance to allow him an opportunity to litigate his pending post-conviction petition on his prior murder conviction in Washington, D.C.

Respectfully Submitted,

/s/ Claudia Van Wyk
**Claudia Van Wyk**
**Billy H. Nolas**
FEDERAL COMMUNITY DEFENDER
OFFICE FOR THE EASTERN DISTRICT
OF PENNSYLVANIA
Suite 545W- The Curtis Center
601 Walnut Street
Philadelphia, PA 19106
Phone: 215-928-0520
Fax: 215-928-0826
claudia_vanwyk@fd.org
billy_nolas@fd.org

/s/ Eric M. Albritton
**Eric M. Albritton**
Texas Bar No. 00790215
ALBRITTON LAW FIRM
P.O. Box 2649
Longview, Texas 75606
Phone: (903) 757-8449
Fax: (903) 758-7397
ema@emafirm.com

Counsel for Defendant Joseph Ebron

October 27, 2014

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of October 2014, I electronically filed the foregoing

Unopposed Motion to Stay and Hold § 2255 in Abeyance using the Court's CM/ECF system.

Electronic notice will be provided to the following individuals:

**Joseph R. Batte**
Assistant United States Attorney
United States Attorney's Office
 for the Eastern District of Texas
350 Magnolia St.
Suite 150
Beaumont, TX 77701

**John A. Craft**
Assistant United States Attorney
United States Attorney's Office
 for the Eastern District of Texas
350 Magnolia St.
Suite 150
Beaumont, TX 7770

/s/ Claudia Van Wyk
Claudia Van Wyk

**CERTIFICATE OF CONFERENCE**

On October 14, 2014, undersigned counsel, Ms. Van Wyk, spoke by telephone and communicated by email with AUSA Joseph Batte, in compliance with Local Rule CV-7(h).  He advised her that the government does not oppose this motion.

/s/ Claudia Van Wyk
Claudia Van Wyk

Counsel for Movant

Dated: October 27, 2014