IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **CIVIL NO. 1:14-CV-00539** |
| **v.** | : | **(CRIMINAL NO. 1:08-CR-36)** |
| | : | |
| **JOSEPH EBRON, Defendant.** | : | |

### DEFENDANT JOSEPH EBRON'S REPLY IN SUPPORT OF AMENDED MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255

**Eric P. Motylinski**
**Jennifer Chiccarino**
FEDERAL COMMUNITY DEFENDER
OFFICE FOR THE EASTERN DISTRICT
OF PENNSYLVANIA
Suite 545W—The Curtis
601 Walnut Street
Philadelphia, PA 19106
Phone: (215) 928-0520
Fax: (215) 928-0826

*Counsel for Joseph Ebron*

January 20, 2026

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...........................................................................................................ii

I.    Trial Counsel Provided Ineffective Assistance. ...................................................................1

    A. Trial Counsel Failed to Investigate and Present Available Evidence to Support Their Chosen Defense. .....................................................................................................................1

        1. Uncalled Witnesses ...............................................................................................1

        2. Discovery.................................................................................................................3

    B. Trial Counsel Failed to Familiarize Themselves with, or Obtain Records Relating to, the Criminal History of the Government's Star Witness, Charles Sherman. .....................................4

    C. Counsel Rendered Ineffective Assistance Leading to the Improper Introduction of Ebron's Prior Murder Conviction.....................................................................................................5

    D. Counsel Failed to Object to Jury Instructions that Did Not Submit Any Lesser-Included Offense and Did Not Explain that an Accomplice May Have a Less Culpable Mental State..6

    E. The Cumulative Effect of Trial Counsels' Deficiencies Prejudiced the Defense. ......................8

II.   Petitioner Was Denied His Sixth Amendment Right to a Fair Trial by an Impartial Jury by the Inclusion of a Juror Who Lied in His Questionnaire and During Voir Dire on Grounds that, if the Juror Had Responded Correctly, Would Have Provided the Defense with a Valid Challenge for Cause.....................................................................................................................................8

III.  The Government Denied Ebron's Rights to Due Process of Law, to Confront His Accusers, and to Present a Complete Defense in Violation of the Fifth, Sixth, and Eighth Amendments by Suppressing Favorable Material Evidence...................................................................................10

    A. The Government Failed to Disclose Reports of Conversations and Arguments Between Mosley and Ebron in Which Ebron Was Overheard Telling Mosley that Barnes Was Not Supposed to Be Killed. ...................................................................................................10

    B. The Government Failed to Disclose Exculpatory Forms and Interviews in the Possession of the Bureau of Prisons and Other Related Investigative Agencies. ...........................................10

IV.   The Government Denied Ebron's Right to Due Process of Law, to Confront His Accusers, and to Present a Complete Defense in Violation of the Fifth, Sixth, and Eighth Amendments by Presenting, or Failing to Correct, False Testimony of Its Key Witness, Charles Sherman.....10

V.    The Cumulative Effect of the Errors Requires Relief. ...................................................................12

PRAYER FOR RELIEF ...........................................................................................................................12

## TABLE OF AUTHORITIES

**Federal Cases**

*Banks v. Dretke*, 540 U.S. 668 (2004) ................................................................................ 11

*Brecht v. Abrahamson*, 507 U.S. 619 (1993) ...................................................................... 12

*Coleman v. Thompson*, 501 U.S. 722 (1991) ...................................................................... 11

*Glossip v. Oklahoma*, 604 U.S. 226 (2025) ............................................................... 5, 11, 12

*Herrera v. Collins*, 506 U.S. 390 (1993) ............................................................................ 10

*Kyles v. Whitley*, 514 U.S. 419 (1995) ............................................................................... 12

*Lyons v. McCotter*, 770 F.2d 529 (5th Cir. 1985) ............................................................. 6, 7

*Simpson v. Carpenter*, 912 F.3d 542 (10th Cir. 2018) ........................................................ 11

*Sparks v. Davis*, 756 F.App'x 397 (5th Cir. 2018) .............................................................. 11

*Strickland v. Washington*, 466 U.S. 668 (1984) ................................................................... 2

*Strickler v. Greene*, 527 U.S. 263 (1999) ........................................................................... 11

*Trevino v. Davis*, 829 F.3d 328 (5th Cir. 2016) ................................................................... 1

*United States v. Bernard*, 762 F.3d 467 (5th Cir. 2014) ....................................................... 1

*United States v. Bishop*, 264 F.3d 535 (5th Cir 2001) ....................................................... 8, 9

*United States v. Bowler*, 252 F.3d 741 (5th Cir. 2001) ......................................................... 2

*United States v. Langston*, 576 F.2d 1138 (5th Cir. 1978) .................................................... 6

*United States v. Lopez*, 979 F.2d 1024 (5th Cir. 1992) ...................................................... 5, 6

*Williams v. Taylor*, 529 U.S. 362 (2000) .......................................................................... 2, 3

**Federal Statutes**

18 U.S.C. § 2 ....................................................................................................................... 7

28 U.S.C. § 2255 .................................................................................................................. 2

**Rules**

Fed. R. Evid. 609 ................................................................................................................ 5

The government asserts that all Ebron's claims are meritless. For the reasons that follow, the government is wrong, and this Court should conduct an evidentiary hearing and grant relief.

## I.   Trial Counsel Provided Ineffective Assistance.

### A.   Trial Counsel Failed to Investigate and Present Available Evidence to Support Their Chosen Defense.

#### 1.   Uncalled Witnesses

The government complains that, in arguing that trial counsel should have investigated and presented specified witnesses, Ebron is merely—and impermissibly—calling for "more of the same." Dkt. No. 64 at 13 (quoting *United States v. Bernard*, 762 F.3d 467, 476 (5th Cir. 2014)). Not so. These witnesses, if called, would have testified not to "more of the same" but rather to corroborate Ebron's contention that he did not participate in the planning or the carrying out of the homicide and to cast doubt on the testimony of Charles Sherman, the government's key witness.

As for **Quinton Jones**, the government argues that Ebron fails to (1) show he would have testified, (2) set out the content of his proposed testimony, and (3) show that the testimony would have been favorable. Dkt. No. 64 at 14 (citing *Trevino v. Davis*, 829 F.3d 328, 338 (5th Cir. 2016)). Jones's affidavit refutes this. Ex. 26, A78–79. As to (1), Jones was willing to testify: "I wrote Warden Outlaw explaining the whole situation and saying that if someone wanted to know what happened, I would talk to them," and "I want to help Joseph." Ex. 26, A79. As to (2) and (3), the affidavit provides his account of what happened, and it supports Ebron's account, including that Mosley, not Ebron, killed Barnes, and Ebron was trying to get out of the cell during the attack: "Bacote, Sherman, and Mosley were talking about the plan to kill Barnes," Ex. 26, A78; "I understood that he was trying to tell me that Joseph was scared and trying to get out of the way," *id.*; "They said Funk [Mosley] pulled out the knife and started stabbing Barnes," *id.*; "Mosley was stabbing him," *id.*; "Bacote told me that Joseph was scared and trying to get out of the room," *id.*; "Mosley tole me again that Ebron was not part of the murder and was mad because he went in the room. Mosley didn't really want Joseph to be

1

a part of it," Ex. 26, A79.

The government fares no better in arguing that this Court, in denying Ebron's motion for a new trial, already decided that Jones's testimony would not have helped Ebron. Dkt. No. 64 at 15. First, the new trial standard is different from—and higher than—the standard governing this § 2255 motion. Specifically, new trial motions based on newly discovered evidence are disfavored and reviewed with great caution. Ex. 27, A86 (quoting *United States v. Bowler*, 252 F.3d 741, 747 (5th Cir. 2001)). Further, the Court determined that it was "not persuaded that Jones's proposed testimony would *likely* produce an acquittal, as required by the fifth *Berry* factor." Ex. 27, A89 (emphasis added). That preponderance-of-the-evidence standard is higher than the reasonable-probability standard of *Strickland v. Washington*, 466 U.S. 668, 694 (1984), as a matter of law. *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). Second, in the new trial motion, the Court was considering Jones's testimony only in isolation. But here Ebron is offering not only Jones's testimony but also that of a host of others (discussed below). Third, the government conspicuously fails to mention the primary thrust of the Court's denial of the new trial motion, which was based on counsel's failure to diligently investigate Jones's account before trial. Ex. 27 ("Ebron fails to satisfy the second prong of the *Berry* analysis— that the failure to detect Jones's version of events was not due to a lack of diligence," A87; "Because this evidence could have been discovered before trial with the exercise of due diligence, a new trial is not warranted at this juncture, over three years later," A89). That analysis underscores counsel's ineffectiveness here. The Court's prior prejudice analysis was thus conducted under a different, more onerous legal standard and considered a far more limited factual record than is before it now.

As for **William Mercer**, the government argues that, as with Jones, Ebron cannot meet the *Trevino* factors. But Mercer's affidavit refutes this: he would have testified, the content of his testimony is that of the declaration, and the testimony would have been favorable because it supports Ebron's contention that he didn't know that Mosley was going to stab Barnes. Ex. 21, A51.

2

As for **Kelvin Smith**, the government mischaracterizes the import of his proposed testimony. It was not, as the government suggests, that Smith would say that he didn't give "a green light to murder Barnes," Dkt. No. 64 at 16, but rather that Smith would refute Sherman's statement that there had been a discussion between Sherman and Smith about killing Barnes, Ex. 41, A168–69. This would corroborate Ebron's contention that Mosley's stabbing of Barnes came as a surprise.

As for **Joseph Jackson**, the government argues that it's unlikely he'd be willing to testify, Dkt. No. 64 at 17, but this is refuted by Jackson's declaration, Ex. 23, A57.

As for **Andrew Patrick**, the government argues that his "description of the murder . . . does not jive [sic] with the medical examiner's testimony." Dkt. No. 64 at 17. But the government does not explain how that is so. Indeed, Patrick's declaration appears to be consistent with the medical examiner's testimony. Patrick says that Mosley told him that "he got on top of Barnes and immediately began hitting Barnes with the shank." Ex. 24, A60–61. The medical examiner testified, "The cause of death was multiple stab wounds of the chest, and the manner of death was a homicide." 4/23/09 at 857.

As for **Lonnie Gooding** and **Luther Fuller**, the government contends that their declarations "should be viewed with skepticism." Dkt. No. 64 at 18. Indeed, the government makes the same argument as to Jones (*id.* at 14), Mercer (*id.* at 16), Jackson (*id.* at 16–17), and Patrick (*id.* at 17). Skepticism should apply equally to the government's suppositions and does not justify dismissal of Ebron's claim—rather, it underscores that material facts are disputed and that an evidentiary hearing should be held, which is exactly what Ebron seeks.

### 2.    Discovery

The government contests Ebron's claim that his counsel were ineffective in not seeking and obtaining discovery by arguing that Ebron fails to explain "how the information would have helped him." Dkt. No. 64 at 19. Untrue. As Ebron argued in his Amended Motion, Dkt. No. 53 at 19–20,

the discovery would have yielded, for instance, forms pertaining to inmates' accounts of the circumstances surrounding the killing and the identities of inmates in the SHU. This information could have guided counsels' guilt-phase investigation and led, for instance, to investigation of the inmates named in Part I.A, *supra*. Counsels' failures here were prejudicial, and relief should be granted.

> **B.**     **Trial Counsel Failed to Familiarize Themselves with, or Obtain Records Relating to, the Criminal History of the Government's Star Witness, Charles Sherman.**

The government first quibbles with Ebron's characterization of Sherman as the government's "star" or "key" witness. Dkt. No. 64 at 19–20. But as the government acknowledges, Sherman was so important that he was the *second* witness called at trial. Moreover, he was the *only* government witness who allegedly witnessed the murder. His importance cannot be overstated.

The government characterizes as "immaterial" the differences between Sherman's testimony as to his criminal history and the truth. On the contrary, the differences are stark and material. Sherman testified that he "robbed drug dealers," whom he "despised . . . because of what happened to my mom." 4/20/09 at 166. But discovery in counsels' possession showed that Sherman had previously claimed "that the victim had willingly loaned him the money and then filed a false complaint with the police when the two of them disagreed over the payment schedule." Ex. 46 at 2, A190. His testimony at that robbery trial, Ex. 47, A218, 220, cannot be reconciled with his testimony at Ebron's trial. Moreover, the actual facts of his criminal history, which were available to trial counsel, would have showed that both of Sherman's accounts were lies that distorted the violence and malice of his crimes. *See* Exs. 42–45, A170–88 (material related to Sherman's criminal history in counsels' possession showing for conspiracy, first-degree burglary while armed with intent to commit assault, first-degree burglary while armed with intent to commit robbery, threats to do bodily harm, assault with intent to commit robbery, robbery while armed, first-degree theft, kidnaping while armed, possession of a firearm during a crime of violence, and obstruction of justice; judgment for possession of a firearm by a

4

convicted felon; and excerpts of a presentence report, which notes that he was previously convicted of robbery with a deadly weapon). Effective counsel would have impeached Sherman with his prior testimony and shown the jury that he was a liar and a thief who had obstructed justice and perjured himself in the past. It is reasonably probable that, if the jurors had known that Sherman lied to them under oath, they would have discredited his testimony and found Ebron not guilty of first-degree murder. *See Glossip v. Oklahoma*, 604 U.S. 226, 249 (2025) (a disclosure that a key witness lied while testifying reveals not only that the witness is untrustworthy but also that the witness is willing to lie under oath: "Such a revelation would be significant in any case . . . especially . . . where [the witness] was already 'nobody's idea of a strong witness.'").

### C. Counsel Rendered Ineffective Assistance Leading to the Improper Introduction of Ebron's Prior Murder Conviction.

The government argues that "no amount of pre-trial briefing could have prevented admission of Ebron's prior murder conviction as impeachment after he took the witness stand and claimed that he did not intend to be involved in murdering Barnes," Dkt. No. 64 at 22, and cites several Fifth Circuit cases for the proposition that a testifying defendant may be impeached with prior convictions similar to the crime for which he is on trial, *id.* at 21–22. The government misses the mark. The question is whether the standard—whether "the probative value of the evidence outweighs its prejudicial effect to th[e] defendant," Fed. R. Evid. 609(a)(1)(B)—could have been met in this case. The government relies on a non-existent rule, saying that "the Fifth Circuit has long held that a testifying defendant may be impeached with prior convictions that are similar to the crime for which he is on trial." Dkt. No. 64 at 21. None of the cases cited by the government, however, include such a broad holding. Rather, in each case the question was whether the prior conviction was probative of disputed issues in the case. For example, in *United States v. Lopez*, 979 F.2d 1024 (5th Cir. 1992), "whether Lopez recognized marihuana was relevant to his knowledge of the drug deal about to take place," *id.* at 1032, and "[t]he government sought to contradict Lopez's testimony by proving with the prior conviction

5

for possession that Lopez had seen and did recognize marihuana," *id.* at 1034. Similarly, in *United States v. Langston*, 576 F.2d 1138 (5th Cir. 1978), the defense at trial was that Langston "lacked the requisite mental state to commit the [bank robbery] charged," *id.* at 1139. The prior convictions for robbery and larceny were obviously probative of this defense. Here, although Ebron's prior conviction was for murder, it had no bearing on the disputed issues in this case. There was no dispute over Ebron's recognition of the instrument of a crime as in *Lopez*, and no dispute over the mental state requisite for the offense as in *Langston*. Here, the dispute was whether Ebron knew about a plan to kill the victim, participated in the crime, or experienced shock when he witnessed someone else commit the crime. The only purpose of introducing the prior conviction was to improperly demonstrate propensity. It is reasonably probable that, had counsel rendered professionally competent assistance with respect to the motion in limine, the Court would have excluded the conviction and Ebron would have been acquitted.

The government goes on to argue that "the record does not support Ebron's post-trial claim that he did not want to testify." Dkt. No. 64 at 23. Again, this is an argument in favor of an evidentiary hearing, where evidence could be presented regarding whether Ebron wanted to testify at trial.

The government also argues that Ebron "overemphasizes the importance of his prior conviction in the context of the trial." *Id.* at 24. Nothing could be further from the truth. It is axiomatic that one "can hardly imagine anything more prejudicial" than a jury's learning of a prior similar conviction. *Lyons v. McCotter*, 770 F.2d 529, 534 (5th Cir. 1985) (citation omitted). Counsels' failures here were prejudicial, and relief should be granted.

> **D.      Counsel Failed to Object to Jury Instructions that Did Not Submit Any Lesser-Included Offense and Did Not Explain that an Accomplice May Have a Less Culpable Mental State.**

The government argues that "an objection would have undercut the trial strategy of arguing actual innocence based on Ebron's testimony," Dkt. No. 64 at 24, and that Ebron's "testimony would

6

not have supported a finding of culpability at *any* level," *id.* at 28. Not so. As an initial matter, this position denies the possibility of argument in the alternative, i.e., that counsel should have worked primarily to ensure an acquittal, with a backstop of an offense lesser than first-degree murder. Beyond that, though, the jury, given the evidence, could have found Ebron guilty of involuntary manslaughter: the jury could have found that Ebron had gone into Barnes's cell with Mosley for the purposes of conversation and persuasion, or of physical threats or harm, but not of killing; the jury could have further found that Ebron's failure to stop Mosley or call for help, and his assistance with the moving of Barnes's body, amounted to a grossly negligent and reckless disregard for human life. Similarly, the jury could have found Ebron guilty of second-degree murder: given the absence of a plan to kill, Ebron's failure to intervene physically on Barnes's behalf, and his assistance with moving the body, the jury could have found, not premeditation, but only malice.

As for the aiding-and-abetting instruction, the government fails to engage with Ebron's argument. The government states that "to be convicted of aiding and abetting under 18 U.S.C. § 2, 'a defendant "must *share in the intent to commit the offense*"'" (quoting *United States v. Meyer*, 63 F.4th 1024, 1038 (5th Cir. 2023) (emphasis added)). Dkt. No. 64 at 29. Exactly—"*the offense.*" The instructions the jury received, however, refer to "the intent to commit *a crime*" and "the intent to violate *the law*" in general, not the specific law or crime at hand. 04/30/2009 at 2182, 2183–84 (emphasis added). The government then adds,

> The Fifth Circuit has noted that "it is well-settled 'that a district court does not err by giving a charge that tracks this Circuit's pattern jury instructions and that is a correct statement of the law.'" *United States v. Brannan*, 98 F.4th 636, 638-39 (5th Cir. 2024), *cert. denied*, 145 S. Ct. 2736 (2025) (quoting *United States v. Richardson*, 676 F.3d 491, 507 (5th Cir. 2012)).

Dkt. No. 64 at 29. But because the instructions refer merely to "a crime" and "the law" in general, they do not refer specifically to a shared "intent to commit *the* offense," and thus are not, in *Brannan*'s words, "a correct statement of the law." Counsels' failures here were prejudicial, and relief should be

7

granted.

        **E.**        **The Cumulative Effect of Trial Counsels' Deficiencies Prejudiced the Defense.**

Counsels' performance was thus deficient in numerous ways. For the reasons given in the

Amended Motion, Dkt. No. 53 at 34, Ebron was prejudiced by their cumulative effect.

**II.**        **Petitioner Was Denied His Sixth Amendment Right to a Fair Trial by an Impartial Jury by the Inclusion of a Juror Who Lied in His Questionnaire and During Voir Dire on Grounds that, if the Juror Had Responded Correctly, Would Have Provided the Defense with a Valid Challenge for Cause.**

The government first argues that this claim is procedurally defaulted: "Claims that a trial court

erred in ruling on challenges to the venire should be raised on direct appeal." Dkt. No. 64 at 30. But

Ebron is not claiming that this Court erred in ruling on a challenge to the venire. The claim is that

because the juror lied, trial counsel were deprived of grounds for seeking a valid challenge for cause

(and also that counsel were ineffective for failure to question the juror further). The trial court was

thus deprived of an opportunity to address the issue. Because of the juror's misrepresentations, Ebron

could not have raised this claim at trial or on direct appeal. Accordingly, there is no default.

As to the merits, the government cites *United States v. Bishop*, 264 F.3d 535, 554–55 (5th Cir

2001), to support its contention that the record shows no bias on Juror Dunbar's part. But *Bishop*

doesn't help the government. *Bishop* says that "inaccurate responses to voir dire questions are excused

*when caused by inattention or when a query does not elicit the specific information relevant to the juror's disqualification*."

*Id.* at 555 (emphasis added).

Here, the inaccurate responses could not have been caused by "inattention": Juror Dunbar

came forward after voir dire to alert the Court that he'd failed to disclose to the Court the death of

his brother in prison (he had earlier been asked, and denied, having known anyone who was the victim

of a homicide or having a family member who had been convicted of a crime or incarcerated). But he

did not tell the truth in alerting the Court. When asked whether there was any suggestion of a homi-

cide, he responded, "I don't know what the investigation ever turned up or anything." Dkt. No. 64 at

8

32. He went on to deny that he was "harboring any kind of ill will toward the prison or some suggestion that nobody—that [his] relative was murdered and that nobody ever investigated or anything like that," *id.* at 32–33, and affirmed that "whatever happened with [his] relative—[his] brother would not have anything to do with what we're doing in this case," *id.* at 33. These questions, if answered truthfully, would have elicited "specific information relevant to the juror's disqualification."

Ebron has presented evidence that these were falsehoods: a fellow juror signed a declaration averring that Juror Dunbar told him, during a break in trial, that his brother had in fact been killed in prison. Ex. 50, A297. (The government claims that the declaration "contains factual inaccuracies," Dkt. No. 64 at 34, but does not specify what they allegedly are.) Family knowledge of the prison homicide is corroborated by the declaration of Juror Dunbar's sister. Ex. 51, A298. TDCJ records further confirm that the death was a homicide. Ex. 52 at 2, 4, A300, 302; Ex. 53 at 2, A307.

The fact that Juror Dunbar lied about knowing his brother's death in prison was a homicide casts doubt on his subsequent answers to questions about whether he could be a fair and impartial juror. Juror Dunbar's brother was the victim of a prison homicide; Ebron was tried for a prison homicide. Had Dunbar been honest with the Court, he would have provided defense counsel valid grounds for a challenge for cause, and the Court would have granted it. His inaccurate responses were not due to his inattention or counsel's failure to pose a question designed to elicit relevant information; his bias must be inferred.

Relief should be granted. If the Court has any doubt on this question, an evidentiary hearing would be an appropriate forum to hear testimony, including from Juror Dunbar, his sister, and the other juror.

III.   **The Government Denied Ebron's Rights to Due Process of Law, to Confront His Accusers, and to Present a Complete Defense in Violation of the Fifth, Sixth, and Eighth Amendments by Suppressing Favorable Material Evidence.**

A.   **The Government Failed to Disclose Reports of Conversations and Arguments Between Mosley and Ebron in Which Ebron Was Overheard Telling Mosley that Barnes Was Not Supposed to Be Killed.**

The government here repeats its refrain that "the post-trial affidavits should be viewed with suspicion." Dkt. No. 64 at 37 (citing Justice O'Connor's concurrence in *Herrera v. Collins*, 506 U.S. 390, 423 (1993)). Ebron stands by the post-trial declarations and arguments set forth in his Amended Motion, Dkt. No. 53 at 37–39. If this Court has any doubt as to the veracity of the declarants' statements, an evidentiary hearing would be the appropriate forum to test them.

B.   **The Government Failed to Disclose Exculpatory Forms and Interviews in the Possession of the Bureau of Prisons and Other Related Investigative Agencies.**

The government accuses Ebron of engaging in "unmitigated speculation." Dkt. No. 64 at 38. Not so. Upon information and belief, the government reports related to Barnes's murder that are likely favorable to the defense and whose disclosure, it is reasonably probable, would have resulted in a different trial outcome. These include mass interview forms, an SIS Report, and an After Action Report. The government's "unmitigated speculation" phrase is in response to allegations regarding the SIS Report and After Action Report. The government conspicuously does *not* deny that those reports contained favorable information for Ebron. (It does make such a denial only as to the mass interview forms. Dkt. No. 64 at 38.) This non-denial underscores the necessity of discovery and a hearing.

IV.   **The Government Denied Ebron's Right to Due Process of Law, to Confront His Accusers, and to Present a Complete Defense in Violation of the Fifth, Sixth, and Eighth Amendments by Presenting, or Failing to Correct, False Testimony of Its Key Witness, Charles Sherman.**

The government argues that this claim is procedurally defaulted because "Ebron could have raised this issue at trial or on direct appeal." Dkt. No. 64 at 39. Ebron can show cause and prejudice

10

to overcome any default. Cause requires "some objective factor external to the defense" that prevented the defense from raising the claim earlier. *Coleman v. Thompson*, 501 U.S. 722, 753 (1991) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1988)). False testimony by a key government witness is a quintessential example of such an external factor. And prejudice is shown merely by showing the materiality of the false testimony. *See Strickler v. Greene*, 527 U.S. 263, 282 (1999); *Banks v. Dretke*, 540 U.S. 668, 691 (2004). Thus, just as a petitioner overcomes the default of a *Brady* claim by establishing the merits of his claim, *id.*, so Ebron overcomes any default by establishing the merits of this claim. *Accord Sparks v. Davis*, 756 F.App'x 397, 401 (5th Cir. 2018) ("Because the merits analysis of Sparks's false testimony claim largely parallels the 'cause' threshold he must clear, it is permissible to consolidate both issues into a single inquiry."); *see also Simpson v. Carpenter*, 912 F.3d 542, 575 n.17 (10th Cir. 2018) (observing that claims under *Napue v. Illinois*, 360 U.S. 264 (1959), demonstrate cause and prejudice to overcome any default merely by establishing their merits). "The Due Process Clause imposes the responsibility and duty to correct false testimony on representatives of the State, not on defense counsel." *Glossip*, 604 U.S. at 252 (citation modified) (quoting *Napue*, 360 U.S. at 269–70).

As to the merits, the government argues that (1) the government didn't know at the time Sherman testified that his testimony was false, and (2) Sherman's falsehoods were immaterial. Dkt. No. 64 at 39–41. Neither contention withstands scrutiny. It may be true that the government did not have in its possession the transcript of Sherman's testimony at the time of trial, but it did have Sherman's presentence report, which contradicts Sherman's testimony just as surely as does his prior testimony. And as argued *supra*, *see* I.B, his falsehoods were both stark and material. In *Glossip*, the Supreme Court explained that materiality analysis under *Napue* must consider what would have happened "[h]ad the prosecution corrected [the false testimony] on the stand. . . . [A] correction would have revealed to the jury not just that [the witness] was untrustworthy . . . , but also that [the witness] was willing to lie to them under oath." 604 U.S. at 248–49. A witness's "willingness to lie . . . to the jury"

11

is never irrelevant. *Id.* at 249. "A lie is a lie, no matter what its subject." *Id.* The Court should grant relief on this claim.

## V.    The Cumulative Effect of the Errors Requires Relief.

It is reasonably probable that, considered together, the foregoing errors affected the outcome of Ebron's trial and had a substantial and injurious effect on the result. *See Kyles v. Whitley*, 514 U.S. 419, 435 (1995); *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993). Accordingly, this Court should grant relief.

### <u>PRAYER FOR RELIEF</u>

WHEREFORE, Ebron prays that this Court (1) order such discovery as appropriate to resolve Ebron's claims for relief; (2) conduct an evidentiary hearing on all claims involving disputed material facts; (3) vacate Ebron's convictions and order a new trial; and (4) grant such additional relief as may be necessary and appropriate.


Respectfully Submitted,

/s/ Eric P. Motylinski
Eric P. Motylinski
Jennifer Chiccarino
Assistant Federal Defenders
Federal Community Defender Office
  for the Eastern District of Pennsylvania
601 Walnut Street—The Curtis
Suite 545
Philadelphia, PA 19106
(215) 928-0520
eric_motylinski@fd.org
jennifer_chiccarino@fd.org

12

**CERTIFICATE OF SERVICE**

I hereby certify that on this 20th day of January 2026, I electronically filed the foregoing Reply in Support of Amended Motion to Vacate, Seat Aside or Correct Sentence Pursuant to 28 U.S.C. § 2255 using the Court's CM/ECF system. Electronic notice will be provided to the following individuals:

**Joseph R. Batte**
Assistant United States Attorney
United States Attorney's Office
  for the Eastern District of Texas
350 Magnolia St.
Suite 150
Beaumont, TX 77701

**Traci Kenner**
Assistant United States Attorney
United States Attorney's Office
  for the Eastern District of Texas
350 Magnolia St.
Suite 150
Beaumont, TX 77701

/s/ Eric P. Motylinski
Eric P. Motylinski